UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Lexie Coats**, Individually and For Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**Catapult Health PA,**<br><br>*Defendant.* | **Case No.**   1:23-cv-00044<br><br><br>**Jury Trial Demanded** |

# ORIGINAL CLASS ACTION COMPLAINT

## SUMMARY

1. Plaintiff Lexie Coats (Coats) brings this lawsuit pursuant to the Illinois Minimum Wage Law (IMWL) and the Illinois Wage Payment and Collection Act (IWPCA), to recover unpaid overtime wages and other damages from Defendant Catapult Health PA (Catapult) for herself and all Class Members (defined below) under the IMWL and IWPCA. *See*, 820 Ill. Comp. Stat. Ann. 105/1 *et seq.*; 820 Ill. Comp. Stat. Ann. 115/1 *et seq.*; 735 Ill. Comp. Stat. Ann. 5/13-206.

2. Catapult failed to pay Coats and Class Members overtime as required under Illinois law.

3. Instead, Catapult would cap Coats' and Class Members' time and require them to work off-the-clock.

4. Catapult failed to pay Coats and Class Members for all compensable hours (including those in excess of 40 in a workweek) and improperly reduced the number of regular and overtime hours it paid them.

5. Catapult required Coats and the Class Members to work off-the-clock for certain activities.

-1-

6. Catapult maintained policies which would decrease the time on its employees' timesheets.

7. As a result of working this uncompensated time, Coats and Class Members accrued work time for which they were not compensated.

8. During weeks that Coats and the Class Members worked over forty (40) hours a week, under the IMWL, the unpaid time is owed at a rate that is one and a half times their regular hourly rate.

9. During weeks that Coats and the Class Members worked and were not paid for all time worked under forty (40) hours a week, the unpaid time is owed at the hourly rate Catapult promised and agreed to pay Coats and the Class Members for their labor.

10. Catapult paid Coats and the Class Members a regular rate and a variable rate but failed to consider this blended rate in determining overtime compensation.

11. Coats brings her IMWL overtime claim and IWPCA unpaid wage claim as a class action pursuant to Fed. R. Civ. P. 23.

## JURISDICTION AND VENUE

12. This Court has jurisdiction under 28 U.S.C. § 1332(a) and (d), because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states.

13. Coats is a resident of Texas.

14. Catapult is a professional association of Texas.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Catapult conducts substantial business in this judicial district and is subject to the Court's personal jurisdiction with respect to the civil action in question.

16. Catapult operates extensively throughout Illinois.

17. Catapult employed numerous Class Members who provided health services in this District and Division.

18. Venue is proper as to Coats because Coats performed work for and on behalf of Catapult throughout Illinois, including this District and Division.

## THE PARTIES

19. Coats was an hourly employee of Catapult.

20. Coats worked for Catapult from approximately January 2018 until March 2022 throughout various states, including Illinois.

21. In Illinois, Coats worked in Chicago, Grayslake, Joliet, Elgin, Rockford, Rosemont, and Waukegan, and other locations.

22. Coats was employed by Catapult as an "employee," as that term is defined by Section 3 of the IMWL, 820 ILCS 105/3, and Section 2 of the IWPCA, 820 ILCS 115/2.

23. Catapult was Coats' "employer" as that term is defined by Section 3 of the IMWL, 820 ILCS 105/3 and Section 2 of the IWPCA, 820 ILCS 115/2.

24. Catapult excluded and mischaracterized certain compensable hours Coats and the Class Members worked from the hours it used to calculate their pay, improperly reducing the number of weekly regular and overtime hours it paid them.

25. Coats brings this action individually and on behalf of hourly workers that worked for or on behalf of Catapult Health PA in the past 3 or 10 years to the present in Illinois, who were not paid for all hours worked, including both straight time hours and hours worked over 40 in a workweek.

26. With respect to Coats' IMWL claim, Coats seeks to represent a class that is comprised of and defined as:

> **All current and former health workers employed by Catapult Health PA in the past 3 years in Illinois, who (1) were paid hourly; or (2) were paid a regular rate and a variable rate.** (IMWL Class Members).

27. With respect to Coats' IWPCA claim, Coats seeks to represent a class that is comprised of and defined as:

**All current and former health workers employed by Catapult Health PA in the past 10 years in Illinois, who (1) were paid hourly; or (2) were paid a regular rate and a variable rate.** (IWPCA Class Members).

28. The IMWL Class Members and the IWPCA Class Members shall collectively be referred to as the "Class Members."

29. Coats' IMWL and IWPCA claims are being brought as a class action under Rule 23, Fed. R. Civ. P. 23, because the IMWL and IWPCA Classes are so numerous that joinder of all class members is impracticable.

30. The Class Members are easily ascertainable from Catapult's business and personnel records.

31. Catapult knows who the Class Members are because after agreeing to a stay in a separate case pending against it in Pennsylvania[1] and feigning an interest in mediating, Catapult attempted to have current employee Class Members sign away their rights to be a part of a class or collective action in Illinois and any other state where Catapult does business.

32. Catapult Health PA is a Texas Professional Association doing business throughout the United States. Catapult may be served by serving its registered agent: David L. Michel, 5294 Belt Line Road, Suite 200, Dallas, TX 75254.

## THE FACTS

33. Catapult provides in-person and virtual healthcare services to patients across the United States.

34. Coats worked for Catapult as a Traveling Health Technician from approximately January 2018 until March 2022.

---

[1] *Sagna, et al. v. Catapult Health PA*, No. 2:22-cv-03975, Doc. 10 (W.D. Pa, Oct. 26, 2022).

35. Coats worked for Catapult at various locations throughout the country, including Illinois, California, Texas, Oklahoma, Arkansas, Colorado, Utah, Nevada, Nebraska, North Dakota, Minnesota, Kansas, Wisconsin, Montana, Louisiana, Indiana, Kentucky, Tennessee, Georgia, South Carolina, North Carolina, Virginia, West Virginia, Pennsylvania, New York, Vermont, New Jersey, Connecticut, and Arizona.

36. As a Traveling Health Technician, Coats would set up temporary health clinics throughout the nation, including Illinois.

37. As a Traveling Health Technician, Coats administered the testing and screening of patients during their appointments with Catapult's healthcare providers and reported all patient information into Catapult's EMR (Electronic Medical Record) system.

38. This included setup and take down of mobile or temporary sites.

39. Although Coats and the Class Members were regularly scheduled to work an 8 hour clinical shift, they would frequently work more than their scheduled shifts.

40. As a Traveling Health Technician, Coats was regularly required "to report to work as early as 4 AM and end as late as 5 PM."[2]

41. As a Traveling Health Technician, Coats was regularly required "to travel overnight for at least 3 days (2 nights away) per week, consecutively."[3]

42. As a Traveling Health Technician, Coats was regularly required to travel "to and from events within a 100-mile radius."[4]

43. Coats reported the hours she worked to Catapult on a regular basis, including her travel time.

---

[2] *See* https://www.linkedin.com/jobs/view/traveling-health-technician-dallas-tx-at-catapult-health-3014862265/ (last visited December 23, 2022).
[3] *Id.*
[4] *Id.*

44. Even though Coats and the Class Members reported their hours worked (including travel time), Catapult did not pay them for all hours worked.

45. If Coats' combined work and travel time in a day exceeded 10 hours, she was only paid for 10 hours. For example, if Coats traveled 8 hours to a job location and worked for 8 clinic hours that day, Coats would only be compensated for 2 hours of travel time and 8 hours of work time.

46. Or for example, if Coats traveled 3 hours to a job location, set up for an hour, conducted clinic for 8 hours, and then drove 3 hours, she was only paid for 8 hours of clinic and 2 hours of drive time.

47. This policy likewise applied to the Class Members.

48. Catapult also deducted a mandatory 30 minute lunch break from the working time of Coats and the Class Members.

49. Coats' and the Class Members' work schedule did not permit them to actually take a lunch break.

50. For example, if Coats was supposed to take her lunch break at noon, but a patient was scheduled, she would see the patient and work through lunch.

51. Coats routinely worked 50 to 60 hours per week. However only the hours Catapult authorized are reflected and recorded in Catapult's pay and time records.

52. Catapult routinely failed to accurately record the hours its employees spent performing work on its behalf.

53. Additionally, Catapult failed to pay Coats and the Class Members for all of the work they performed, specifically for:

        a. Overnight travel away from their home community;
        b. Traveling to and from special one-day assignments in another city;
        c. Traveling to, from, and between job locations;
        d. Work performed while traveling;

    e. Attending mandatory training and compliance sessions;
    f. Shortened lunch breaks;
    g. Shuttle time to a special one-day assignment;
    h. Set up time before clinic opened; and
    i. Waiting time before clinic opened.

54. Catapult uniformly applied its illegal policy of excluding certain hours from compensation to Coats and the Class Members, regardless of their specific job title, duties, client, or location worked.

55. Catapult regularly mischaracterized the type of work performed by its employees (including Coats) to avoid paying them in full for all of the hours they worked, including their overtime hours and hours over 40 in a workweek.

56. Catapult improperly paid Coats and the Class Members at two or more different rates of pay in a single workweek and failed to accurately pay these workers using a legal blended rate.

57. Instead, Catapult paid two different rates for overtime worked—clinic rates and variable rates—a practice which artificially reduced the amount of overtime the worker received each week.

58. Catapult's payment scheme violates the IMWL and IWPCA.

59. Catapult did not pay Coats and the Class Members at their regular rate for all hours worked up to 40 in a workweek.

60. Catapult did not pay Coats and the IMWL Class Members at time and a half for all hours worked over 40 in a workweek.

61. Catapult was and is aware of the overtime requirements of the IMWL and IWPCA.

62. Catapult nonetheless failed to pay certain employees, such as Coats, overtime for all hours worked.

63. Catapult knew or should have known its overtime pay policy should have included the correct blended rate.

64. Catapult knew or should have known its policies required its employees to perform off-the-clock work.

65. Catapult knew or should have known that its policies led to the alteration of employees' timesheets and missed meal periods.

66. Catapult's failure to pay overtime to these workers was, and is, a violation of the IMWL.

67. Catapult's failure to pay these workers for all hours worked was, and is, a violation of the IWPCA.

### CLASS ACTION ALLEGATIONS

68. Coats incorporates the preceding paragraphs by reference.

69. Coats brings this claim under the IMWL and IWPCA as a class action. The questions of law and fact for the Class Members are the same as Coats.

70. The Class Members were victimized by Catapult's uniform pay policy which is in violation of the IMWL and IWPCA.

71. Other Class Members worked with Coats and indicated they were paid in the same manner (without overtime and for less than all hours worked).

72. Other Class Members worked with Coats, and they performed similar health care related services for Catapult.

73. Indeed, other Class Members worked with Coats, and, regardless of their precise job title, their job duties were to perform health care related services in accordance with Catapult's policies, procedures, plans, and regulations.

74. Based on their experiences with Catapult, Coats is aware Catapult's illegal pay plan was imposed on the Class Members.

75. The Class Members are similarly situated in all relevant respects.

76. Even if their precise job duties varied somewhat, these differences do not matter for the purposes of determining their entitlement to all regular wages and overtime.

77. The Class Members were not paid for all of their work, including overtime hours worked.

78. All of the Class Members worked for Catapult in Illinois.

79. The illegal payment scheme that Catapult imposed on Coats was likewise imposed on all Class Members.

80. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the IMWL and IWPCA.

81. The IMWL Class Members were similarly denied overtime when they worked more than 40 hours per week.

82. The overtime and regular wages owed to Coats and the IMWL Class Members will be calculated using the same records.

83. The overtime and regular wages owed to Coats and the IMWL Class Members will be calculated using the same formula.

84. The wages owed to Coats and the IWPCA Class Members will be calculated using the same records.

85. The wages owed to Coats and the IWPCA Class Members will be calculated using the same formula.

86. Coats' experiences are therefore typical of the experiences of the Class Members.

87. The specific job titles or precise job locations of the various members of the class do not prevent a class action.

88. Coats has no interests contrary to, or in conflict with, the Class Members that would prevent a class action.

89. Like each Class Member, Coats has an interest in obtaining the unpaid wages and unpaid overtime wages owed under the IMWL and IWPCA.

90. A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent a class action, many Class Members will not obtain redress of their injuries.

92. Absent a class action, Catapult will reap the unjust benefits of violating the IMWL and IWPCA.

93. Further, even if some of the Class Members could afford individual litigation against Catapult, it would be unduly burdensome to the judicial system.

94. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Class Members, as well as provide judicial consistency.

95. The questions of law and fact that are common to each Class Member predominate over any questions affecting solely the individual members.

96. Among the common questions of law and fact are:

    a. Whether Catapult's decision to not pay for all hours worked violated the IMWL and IWPCA;

    b. Whether Catapult's failure to pay overtime at the correct blended rate violated the IMWL;

    c. Whether Catapult's decision to not pay overtime compensation to these workers was made in good faith; and

    d. Whether Catapult's illegal pay practice applied to all Class Members; and

    e. Whether Coats and the Class Members sustained damages arising out of Catapult's illegal and uniform compensation policy.

97. Coats knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

98. Catapult is liable under the IMWL and IWPCA for failing to pay all wages and overtime wages to Coats and the Class Members.

99. Consistent with Catapult's illegal pay plan, Coats and the Class Members were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

100. As part of its regular business practices, Catapult intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the IMWL and IWPCA with respect to Coats and the Class Members.

101. Catapult's illegal payment scheme deprived Coats and the Class Members of the premium overtime wages they are owed under IMWL.

102. Catapult was aware, or should have been aware, that the IMWL and IWPCA required it to pay Coats and the Class Members for all wages and overtime premiums for all hours worked in excess of 40 hours per workweek.

103. There are at least 100 similarly situated Class Members who have been denied overtime pay during the relevant time period in violation of the IMWL and IWPCA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

104. Those similarly situated employees are known to Catapult, are readily identifiable, and can be located through Catapult's records.

### COUNT ONE - VIOLATIONS OF THE IMWL

105. Coats incorporates the preceding paragraphs by reference.

106. Coats brings this claim under the IMWL as a class action.

107. The matters set forth in this Count arise from Catapult's violation of the overtime compensation provisions of the Illinois Minimum Wage Law. 820 ILCS 105/4a. Coats brings this action on her own behalf and on behalf of the IMWL Class pursuant to 735 ILCS 5/2-801.

108. Pursuant to 820 ILCS 105/4a, for all weeks during which Coats and the IMWL Class Members worked in excess of 40 hours, Coats and the IMWL Class Members were entitled to be compensated at one and one-half times their regular hourly rate of pay for time worked in excess of 40 hours per week.

109. At all relevant times, Catapult was subject to the requirements of the IMWL.

110. At all relevant times, Catapult employed Coats and each Class Member with Illinois state law claims as an "employee" within the meaning of the IMWL.

111. The IMWL cover and apply to all IMWL Class Members working in and based out of Illinois, including Coats.

112. Coats and the IMWL Class Members all worked for Catapult in Illinois.

113. The IMWL requires employers like Catapult to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 in any one week. Coats and the IMWL Class Members are entitled to overtime pay under the IMWL.

114. Catapult had a policy and practice of not paying Coats and each Class Member for all hours worked including those overtime hours over 40 in a workweek.

115. Pursuant to 820 ILCS 105/12(a), Plaintiffs and the IMWL Class Members are entitled to recover punitive damages in the amount of five percent (5%) per month of the amount of under payments.

116. Coats and each IMWL Class Member seek unpaid regular rate pay and overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 in a workweek,

treble damages in an amount equal to the amount of all overtime wages due, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

117. Coats and each IMWL Class Member also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Catapult, as provided by the IMWL.

### COUNT TWO - VIOLATIONS OF THE IWPCA

118. Coats incorporates the preceding paragraphs by reference.

119. Coats brings this claim under the IWPCA as a class action.

120. This count arises under the IWPCA, 820 ILCS 115/1, *et seq.*, for Catapult's failure and refusal to pay Coats and the IWPCA Class they seek to represent for all their wages earned at the rates Catapult agreed to pay them for the work they performed for Catapult.

121. Catapult agreed to pay Coats an hourly rate of pay for all work she performed for Catapult, and Coats accepted Catapult's offer.

122. Catapult agreed to pay IWPCA Class Members an hourly rate of pay for all work they performed for Catapult, and IWPCA Class Members likewise accepted the Catapult's offer.

123. During the course of their employment with Catapult, Catapult did not compensate Coats for all time she worked at the rate Catapult agreed to pay her for the work she performed for Catapult.

124. Catapult also failed to pay other IWPCA Class Members for all time they worked at the rates Catapult agreed to pay them for the work they performed for Catapult.

125. Coats and members of the IWPCA Class were denied compensation for all time they worked in certain work weeks in violation of the IWPCA.

126. Coats and members of the IWPCA Class were entitled to be compensated for all time they worked at the rate agreed to by the parties, pursuant to the agreements they formed with Catapult.

127. Catapult's failure to pay Coats and the IWPCA Class Members for all earned wages at the rates agreed to by the parties violated the IWPCA.

128. Coats represents certain current and former employees of Catapult who have not been paid for all their earned wages since January 4, 2013, through and including the present.

129. Coats and the IWPCA Class pray for judgment against Catapult as follows:

   A. Judgment in the amount of all straight time hourly back wages due for the unpaid hours Coats and similarly situated persons worked under forty hours per week;

   B. An injunction precluding Catapult from violating the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*;

   C. Damages in the amount of 5% or 2% of the amount of underpayments per month pursuant to the formula set forth in 820 ILCS 115/14(a), depending on when the wages were earned;

   D. Prejudgment interest on the wages owed to Coats and Class Members;

   E. Reasonable attorneys' fees and costs incurred in bringing this action; and

   F. Such other and further relief as this Court deems appropriate and just.

## JURY DEMAND

130. Coats demands a trial by jury

## RELIEF SOUGHT

131. WHEREFORE, Coats prays for judgment and all other legal and equitable relief they may be entitled, as follows:

   a. For an Order certifying the Illinois Class pursuant to Fed. R. Civ. P. 23;

   b. For an Order pursuant to IMWL and IWPCA finding Catapult liable for unpaid back wages due to Coats and all the Class Members, attorney fees, costs, penalties, and pre- and post-judgment interest at the highest rates allowed by law; and

   c. For an Order granting such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| **Date**: January 04, 2023 | Respectfully submitted, |
| | s/*Douglas M. Werman*<br>One of Plaintiff's Attorneys |

Douglas M. Werman
Maureen A. Salas
Sarah J. Arendt
Werman Salas P.C.
77 W. Washington St., Ste 1402
Chicago, IL 60602
(312) 419-1008 – Telephone

        **AND**

Michael A. Josephson
Texas State Bar No. 24014780
mjosephson@mybackwages.com
Richard M. Schreiber
Texas State Bar No. 24056278
rschreiber@mybackwages.com
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

        **AND**

Richard J. (Rex) Burch
Texas State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**